## TEMPLE *v.* HAWLEY and others.

A settlement made by a female upon the eve of marriage, while she is under 21 years of age, will not bind her real estate, so but that she may disaffirm it. It is *voidable*, but it passes the estate, and is valid until she avoids it.

She may affirm it during her coverture, and she may disaffirm it after she attains her majority, if she is then sole. It is a vexed question whether she can avoid it at all during her coverture.

Previous to the marriage of R. E. T. and C. M. J., a marriage settlement was executed, which vested her real and personal estate in a trustee, in trust as to two-thirds of the real and all the personal estate, for the separate use of the wife, with a general power of appointment to her; and as to one-third of the real estate, for the use of the husband for life, together with a power of appointment to their issue. C. M. J. was only 18 years of age, and the deed was executed in pursuance of an order of the Court of Chancery, appointing her mother to be her special guardian, for the purpose of assenting to the marriage, approving of the settlement, designating a trustee, and joining in the deed of settlement. This order contemplated an execution by C. M. J. The deed was in the name of C. M. J. by her special guardian, as party of the first part, R. E. T. of the second part, and the trustee of the third part; and it purported to be the grant and conveyance of C. M. J. It was executed by her mother, as special guardian, and by R. E. T. and the trustee; but it was never executed by C. M. J., and after she became of age she refused to ratify or confirm it, and dissented from its provisions:

*Held*, that as to C. M. J., the deed was absolutely void, and did not affect her title to the real estate.

*Held*, also, that R. E. T. ought not to be bound as to his interest which he would otherwise have acquired in the real estate by the marriage—because, 1. The consideration for his relinquishing that interest was a voidable conveyance of the wife's real estate, and no such conveyance had been made. 2. On the ground of mistake, the deed not being in conformity to the order of this court, as it purported to be, and as R. E. T. had a right to suppose. And 3. The deed was a representation to R. E. T. on which he had a right to rely; that it was made pursuant to the order and direction of the Court of Chancery.

The settlement is valid as to the personal estate thereby transferred to the trustee.

On a bill filed by the husband, to set aside the marriage settlement, and submitting to join in the execution of a new one under the direction of the court, a decree was made referring it to a master to report a new settlement of the real estate, preparatory to avoiding the former.

The master having reported a settlement, and that the husband should be the trustee, the court confirmed the selection.

Provisions directed to guard against anticipations of income, in a separate estate, for the wife.

A contingent remainder in fee cannot be limited, in general terms, to take effect upon the death of one who takes *under a prior contingency*, from the person to whom the first remainder in fee is limited. It must be restricted to the happening of an event at or before the determination of the first remainder in fee.

Sept. 13, 14; Oct. 31, 1843. (And April, 1844.)

The bill in this cause was filed on the 17th of October, 1842. It set forth that in the early part of the year 1839, a contract of marriage was entered into between Robert E. Temple the complainant, and Catharine Margaret James, one of the defendants, with the consent of her mother, to be solemnized in June following. That said Catharine being seised of a large real estate, estimated at $100,000, and of about $35,000 of personal estate, being her share in the property of her father, the late William James, deceased; the complainant in the month of May, 1839, suggested to her mother and personal guardian, that an ante-nuptial settlement of her fortune be made for the benefit of the parties, and of their issue. The intended wife was about 18 years of age. On this suggestion, Mrs. James, the mother, by her counsel, presented a petition to the Court of Chancery, which was signed by herself and by Miss James, and prayed for the appointment of the mother to be her special guardian to execute and deliver on the part of the daughter, such deed, or deeds, or instruments in writing, as to her counsel should seem proper and apt to carry the aforesaid suggestion into effect, and establish the trusts above referred to. That upon such petition being presented, the Chancellor, on the 4th of June, 1839, made an order appointing the mother the special guardian of the said Catharine, for the purpose of assenting to her marriage with the complainant, and of approving of the settlement of her separate estate upon her and her heirs at law, and upon the complainant, and of joining in the necessary deed or deeds of trust, and of designating a proper trustee for that purpose. On the 11th day of June, the day before the marriage, a deed of marriage settlement which had been prepared by the counsel of Mrs. James, the mother, and purported to be in pursuance of the said order, was presented for execution, and was executed by Mrs. James, for Catharine Margaret James, by R. E. Temple, and by Gideon Hawley, the trustee. It was not,

and never has been executed by Catharine Margaret James; she was not consulted about its provisions, nor at the time of its execution or her marriage, did she know what they were. The complainant knew nothing of the provisions of the deed, was not consulted in regard to its provisions or its terms, and executed it without examining or perusing it, supposing that his intended wife had been made fully acquainted with it, and had assented to it, and being willing to comply with whatever she should approve. The marriage was solemnized on the 12th day of June, 1839.

The description of the parties in the deed was as follows: " This indenture made, &c., between Catharine Margaret James, "of, &c., an infant under the age of twenty-one years, by Catharine " James, widow, the special guardian of the said infant, and who " was appointed such special guardian by the Honorable Court " of Chancery of this state, by an order entered for that purpose " on the fourth day of June instant, in the office of the Register " of the said Court, party of the first part; Robert E. Temple, of " the army of the United States, party to these presents of the " second part; and Gideon Hawley, of, &c., party to these " presents of the third part." The deed recited, that Catharine Margaret James, as one of the heirs of William James, deceased, was seised of a large real estate in this state and Illinois, and also entitled to about $35,000 of personal estate then held by her general guardian; that a marriage was shortly to be solemnized between her and Robert E. Temple, upon the contract and agreement wherein and whereby the said Robert had agreed that the whole of the real estate of which she was seised or entitled to, and $25,000 of her personal estate, should be held, taken and reckoned as distinct and separate from that of the said Robert, and that he would not intermeddle therewith by assuming the control or disposition thereof, or by charging or encumbering the same with his debts or otherwise, and also that, for the purpose of giving effect to the intention of the parties to those presents of the first and second parts, the said *Catharine Margaret James* might grant, bargain, sell, convey, assign and transfer all her real estate in the states of New-York and Illinois, and also $25,000 of her personal estate

to the party of the third part upon the trusts, and subject to the covenants thereafter specified. That an order of this court had been made as hereinbefore stated, appointing Catharine James special guardian of the said C. M. J. for the purpose of assenting to the said marriage, and of approving of the settlement of her separate estate upon her, her heirs at law, and upon the said Robert E. Temple, and of joining in the necessary deeds of trust for that purpose, and also of designating a proper trustee. That in pursuance of the said authority, the said Catharine James had assented to the said marriage and approved the settlement of the said separate estate upon the said Catharine Margaret James, her heirs at law; and the said Robert E. Temple, and did thereby designate the said Gideon Hawley as trustee, for the purposes aforesaid, as signified and manifested sufficiently by her becoming a party to said deed; and that the said Gideon Hawley had consented to act as trustee, for those purposes, upon the trusts thereinafter declared, and had consented to receive a conveyance of all the real estate of the said C. M. J. therefor. The deed then witnessed that the said *Catharine Margaret James*, by Catharine James, her special guardian as aforesaid, in consideration of the premises, and of one dollar to her in hand paid by Gideon Hawley, and by and with the consent of the said Robert E. Temple, signified by his signing and sealing the same, the said *Cathaine Margaret James* granted, bargained, sold, assigned, conveyed, transferred, and set over to the said Gideon Hawley and to his heirs and assigns, and to his successors in the trust thereafter mentioned, and their assigns, *all her estate, right, title, property, claim, and demand*, to the equal undivided two thirds, of one eleventh part, of all the real estate and lands of which William James died seised, subject to the dower of his widow, and had also transferred and assigned to him in trust $25,000 of her personal estate; to have and to hold the above granted premises and personal property to said Gideon Hawley, his heirs and successors in the trust next thereinafter mentioned, and their assigns, for and during the continuance of the joint lives of the said Catharine Margaret James and Robert E. Temple. *In trust* to receive the rents and profits of the

real estate, and the income, interest, and product of the personal estate, and apply them *to the separate use* of the said Catharine Margaret James, during the continuance of the joint lives of the said Catharine Margaret James and Robert E. Temple, with the remainder in fee in and to the same two thirds of one eleventh of said real estate to the said Catharine Margaret James, her heirs and assigns forever after the death of said Robert if she survived him; and after his decease, if she survived him, she should receive from said trustee the said $25,000, and all the interest and income that might then be due, and remain unpaid thereon; but in case she should die, and her said intended husband should survive her, then the remainder in fee, in the real estate, and the whole of the $25,000 of personal property should immediately go to and become vested in the heirs of the body of the said Catharine and the issue of the said Robert, and to their heirs and assigns forever, in such portions as the said Catharine by will, or an instrument duly executed in the nature of a will, notwithstanding her coverture, might direct and appoint: and in default of such appointment, as such heirs would be entitled to take, by descent, or as next of kin from her if she had died seised of said lands in fee simple, and had survived her husband. That, if at any time during said joint lives and the continuance of the trust, all or any of the real estate should be sold, under judgment or decree, in partition or otherwise, the proceeds should be immediately re-invested in productive real estate, in the State of New-York, by said trustee or his successor, under the direction and with the sanction of the Court of Chancery, or the court under whose judgment or decree the sale should be made, upon the same trust during the joint lives aforesaid, and subject to the same limitation in remainder after the termination of the said trust by the death of either of the said parties, to the said Catharine, or to the heirs of their bodies, as aforesaid, forever. Upon further trust, that the said trustee should have power to sell and convey the lands in Illinois, and vest the proceeds in productive real estate in this state, according to his discretion, and hold the same upon the uses and trusts, and for the purposes and in the proportions mentioned in said deed. That, if the said trustee desired to resign

his trust, he might do so upon petition to the Court of Chancery, and the Chancellor was authorized to appoint a new trustee.

And the said *Catharine Margaret James*, by Catharine James, her special guardian, in consideration of the premises and of one dollar to her paid by the said Gideon Hawley, and by and with the consent of said Robert, signified by his signing and sealing thesaid deed, granted, bargained, sold, assigned, and conveyed to the said Gideon Hawley and his heirs and assigns and his successors in the trust next mentioned, and their assigns, all the one other equal undivided one-third part of one-eleventh of said real estate and land, subject as aforesaid to the dower of Catharine James, to have and to hold the same for and during the continuance of the life of the said Robert E. Temple : *In trust*, to receive the rents and profits of said one-third, and apply them to the use of the said Robert during his life, with remainder in fee from and immediately after his death, to the heirs of the body of the said Robert, and the issue of the said Catharine Margaret James, and to their heirs and assigns forever, in such proportions as the said Robert might in his last will direct and appoint, and in default of such appointment, in the same manner and proportion in which they would be entitled to take the same by descent from him if he had died seised thereof in fee simple, and had survived the said Catharine. That if at any time during the life of the said Robert, the said last mentioned one-third of said real estate should be sold under judgment or decree, in partition or otherwise, the proceeds should be immediately re-invested in productive real estate in this state, by the trustee, under the direction of the Court of Chancery, or court under whose authority the sale was made, upon the same trust, during the life of the said Robert, and subject to the same limitations in remainder as last mentioned after his death, to the heirs of their bodies forever. That said trustee might resign this last mentioned trust, as provided in the former one, and that he might pass his accounts annually as to each trust, upon notice to the parties.

And the said Robert E. Temple, in and by the said deed, in consideration of the premises, and of one dollar to him paid, did covenant, grant, and agree to and with the said Gideon

Hawley, his successor, and assigns in the said trust, that the estate, real and personal, of the said Catharine, at all times during the said marriage, and notwithstanding the marriage, to which she was or might become entitled, viz: the *whole equal undivided eleventh part,* before mentioned, should go and be held by the said Hawley, as trustee, according to the tenor, true intent, and meaning of the said presents, upon the trusts and for the uses and purposes therein expressed and declared in relation thereto; that he would not in any manner intermeddle with the same, except as before mentioned, nor would do, perform, or suffer any act or thing, whereby to incumber, impair, or affect said trust estate; and he did absolutely and fully relinquish all right, title, and claim which, by virtue of the marriage, he would have had to the reception of the rents and profits of the real estate, and of the interest, income, and revenue of the said sum of $25,000, when the said Catharine should have attained the age of twenty-one years. That he would not take or receive, or endeavor to take or receive, the rents, profits, interest, or income of the real estate thereby conveyed in trust, or intended so to be, or any part thereof, otherwise than as provided therein; that he would not do any act, matter, or thing, nor suffer any thing to be done, that might or could impair or otherwise injuriously affect the trust estate thereby created, or intended so to be, but would aid and assist to carry into effect the provisions and covenants of the said deed of trust, and every part thereof; that he would at any time after the 27th day of December, 1841, when his wife would attain her majority, unite with her in executing and delivering to said trustee, or his assigns, or successor, a deed of confirmation of said presents, to carry into effect more fully its covenants and provisions, and vesting the trust thereby created, or intended so to be, in the said Hawley, his assigns, or successor; which deed of confirmation should grant, convey, transfer, and assign to the said Hawley, his assigns, or successor, all the real estate of which the said Catharine was seised, and $25,000 of the personal estate to which she was then entitled; and in case of disagreement as to the provisions of the deed of confirmation, application should be made by either party to the Chancellor,

by petition, to settle the form of the deed, who should have full power and authority to have the provisions of the said presents carried into full effect and execution.

The parties were married on the 12th day of June, 1839. The bill then sets forth the proceedings in a suit in this court for the partition of the real estate of the said William James, commenced prior to the marriage, in which a decree was made on the 24th of July, 1840, and by which the share of Catharine M. Temple was declared to be in Gideon Hawley in trust, she being still an infant; that a partition was subsequently made, and on the 6th of January, 1841, a final decree was entered in that suit, repeating the declaration that the title to Mrs. Temple's share was in her trustee. The lands allotted to her share in severalty, are particularly described. The bill further set forth that the marriage settlement was a mere nullity as to Mrs. Temple, and passed no estate to the trustee. That it was never ratified or confirmed by any act of Mrs. Temple after arriving at the age of twenty-one years; on the contrary, her trustee was, on the 10th day of March, 1842, notified by her, in writing, that she disapproved of the said deed, and wholly dissented therefrom, and refused to give it her sanction; and immediately thereafter he was also verbally notified by the complainant that, as Mrs. Temple refused to confirm the deed, or to be bound by it, he should also regard it as entirely null and void, and should claim and insist on his marital rights until a new deed was executed. After these notices were given, the trustee, by consent, continued to receive the rents and income of the trust estate, without prejudice to the rights of either party, and paid them over as before.

The complainant insisted that his covenants in the deed were null and void, because they are essentially connected with the prior void grant therein; and were founded on the erroneous assumption that the trustee was, by the deed, invested with a valid title to the real estate for the purpose of the trusts; and because he executed the covenants in the confidence that the deed was assented to by his intended wife, and would be ratified by her on her coming of age, if that were necessary to its validity; and because one of the considerations for his covenants was the grant

of the one third of the real estate, to the trustee in trust for his use for life, with power of appointment over the remainder in fee, which grant is wholly ineffectual.

The bill then stated that Mr. and Mrs. Temple were induced to dissent from the settlement, not only because it was void, but because of the following imperfections and defects in its provisions, viz. : That nearly one half, in value, of the lands allotted to Mrs. Temple's share in the partition, are wholly unimproved and unproductive, and chargeable with annual taxes and other expenses; yet the settlement contains no provision for improving the same and rendering them productive. It is doubtful whether it authorizes a sale of such premises and a re-investment. That an authority in the trustee to improve and sell the unproductive property, is indispensable to the protection and beneficial management of the real estate for the interests of the remaindermen, as well as the other parties. And the bill prayed to have the settlement reformed in these particulars, if it were not wholly avoided.

The bill sets forth the birth of two children, issue of the marriage, viz : Robert and William James Temple. These children, together with Mrs. Temple and the trustee, and the presumptive heirs and next of kin of Mrs. Temple, in case of her death without issue, were made defendants. The bill prayed to have the marriage settlement declared void in all its parts, and that a new deed of settlement might be executed, as should be deemed just and proper by the court ; to the direction of which in the premises, the complainant thereby submitted himself.

The trustee, Mr. Hawley, in his answer, admitted the facts charged in the bill, with the exception of the complainant's reasons, inducements, &c., for the execution of the deed, and his ignorance of its contents, and of Mrs. Temple's not having assented or been consulted. The answer admitted that the complainant executed the deed without any particular examination, or any special acquaintance with the detail of its provisions. The surplus of personal estate over $25,000, had been paid over to the complainant, under an order of the court, obtained on his

petition, in which the settlement was referred to, and the substance of it stated.

In the discharge of the duty he has assumed, the trustee insisted on the validity of the trust deed, and that there was no misrepresentation made to induce the complainant to execute it. He admitted that the estate would be benefitted by reforming the settlement as proposed in the bill, and he prayed the protection of the court in the premises.

The answer of Mrs. Temple admitted all the facts charged in the bill, and expressed her wish and desire to have the deed annulled, and a new one executed and approved by the court.

The infant defendants put in a general answer, and the bill was taken as confessed against the adult formal defendants.

Pending the suit, on the 25th of August, 1843, another child was born to Mr. and Mrs. Temple, who was named Catharine Temple, and was made a defendant by a supplemental bill, and answered by her guardian. The cause was heard on the pleadings as to the adult defendants, and upon a master's report of the facts, as to the infants. The testimony before the master established the statements of the bill, with the exception of those matters personal to the complainant, which related to his execution of the deed, and his views, motives, and ignorance, at that time. The order of the Chancellor, made June 4, 1839, was produced, together with his written opinion on making the same, and they were read at the hearing.

*B. F. Butler*, for the complainant, made the following points.

I. The deed of marriage settlement having never been signed, sealed, nor delivered by Mrs. Temple, was, as taken, absolutely null and void : and as there was not even a *voidable* execution by her, the husband is not bound by his covenants in the deed, but the whole instrument should be vacated. 2 *Kent's Com.* 243, 245, 135, 137 ; 18 Ves. 259, *Milner* v. *Ld. Harewood ;* 2 Rus. & Myl. 365, *Simpson* v. *Jones ;* 2 Leigh, 76, *Lee* v. *Stewart ;* 6 Paige, 189, *Champlin* v. *Laytin, opinion of V. C., and* 18 Wend. 407, *opinion of Senator Paige ;* 1 Sto-

ry's Eq. 148, § 133-4, p. 324, § 331; 17 Wend. 119, *Bool* v. *Mix* ; 5 J. C. R. 212, *Schuyler* v. *Hoyle ;* 9 Paige, 283, *Searing* v. *Searing.*

II. At all events, the deed should be reformed and amended in the particulars specified in the bill.

*J. Rhoades,* for the defendant Mrs. Temple, presented the following points :

I. The deed of trust is valid and binding upon the complainant.

II. If the court has the power to reform the trust deed, it should be done in such a manner as to preserve to the defendant, C. M. Temple, the same power over and rights in any productive real estate which may be purchased by the trustee, under the amended or reformed deed, that are reserved to or conferred upon her, in and by the deed set forth in the bill.

III. The costs and reasonable counsel fees of Mrs. Temple should be decreed to be paid out of the trust estate.

*J. V. L. Pruyn,* for the defendant Hawley, the trustee, and for the infant defendants, presented the following points :

1. The trust deed executed in contemplation of the marriage between Robert E. Temple and Catharine Margaret James, is valid. It cannot be impeached by the complainant, as he was of full age at the time of its execution, and no fraud is pretended. Nor will this court permit its validity to be questioned as to Mrs. Temple, inasmuch as it was executed under the sanction and direction of this court, and for the protection of her interests, and is reasonable in its provisions. Atherley on Mar. Set., 49. 1 Bro. C. C. 113, *Durnford* v. *Lane.* Id. 153, *Williams* v. *Williams.* 1 Roper Husb. and Wife, 267.

2. The life estate of Mr. Temple in the real estate and the absolute title to the personal property, passed under the deed, at any rate. And should the court be of opinion that the deed is defective in any other respect, it will not be amended in such a manner as to affect the title to the personal estate, or to change the disposition of the rents and profits of the real es-

tate during the life time of Mr. Temple. 2 Roper Husb. and Wife, 26 ; 18 Ves., 276 ; 3 Atk., 613 ; 1 Bro. C. C. 111.

3. The provision in the deed authorizing this court to settle the form of a deed of confirmation in case of disagreement between the parties, does not authorize any change in the substantial parts of the deed, but relates to matters of form only. Atherley on Mar. Sett. 110.

4. As an offer is made in the bill to execute a new deed of settlement, this court will not decree any part of the present deed invalid, until a new deed, in proper form, is executed by Mr. and Mrs. Temple, duly acknowledged, and deposited in the office of the clerk of this court, to be delivered to the trustee, in case the present deed, or any part of it, should be adjudged to be invalid.

THE ASSISTANT VICE-CHANCELLOR.—The first question in this case is the effect of the deed of marriage settlement on the *title and interest of Mrs. Temple in her real estate.* She did not execute the deed, and has never sanctioned it. Indeed, so far as a married woman can, she has dissented from it, and refused to give it her sanction. As to her, its validity rests wholly upon the force and effect of the deed, and of the order of this court, appointing her mother to be her special guardian. The mother was appointed for the purposes of assenting to the contemplated marriage of Mrs. T., of approving of the settlement of her estate, as recited in the order, and of joining in the necessary deed for that purpose, and of designating a proper trustee. The deed executed by Mrs. James, as such special guardian, was founded upon this order.

There is no doubt but that the deed, as to Mrs. Temple, is an absolute nullity. It is not merely a *voidable conveyance.* It is not her act in any sense. As to her, it is not a conveyance.

The effect which this deed actually has, and the effect which it would have had, if Miss James had joined in its execution, will be illustrated by a brief review of the authorities on the subject of marriage settlements of their real estate made by infants,

The notion that a feme infant could, by marriage articles, in consideration of a competent settlement, bind her inheritance with the consent of her guardians, appears to have originated in a *dictum* of Lord Macclesfield in *Cannel* v. *Buckle,* (2 P. Will. 242.) The decision there was, that a bond given by a woman before marriage, to her intended husband, would be enforced in equity in favor of his heirs.

The next case was *Harvey* v. *Ashley,* (3 Atk. 607,) in which Lord Hardwicke decided that an infant was bound by her settlement of her *personal estate,* made on her marriage, with the approbation of parents and guardians. In the course of his elaborate judgment, Lord H. cited *Cannel* v. *Buckle,* and after quoting the above dictum of Lord Macclesfield, says : " This is going a great way, as it related to the inheritance of the wife ; but there are cases where the court will do it, as if the lands of the wife were no more than adequate consideration for the settlement that the husband makes, and after the marriage, the wife should die *and leave issue* who would be entitled to portions provided for them by the settlement, it would in that case be very reasonable to affirm that settlement." He had previously remarked, that it might be necessary to apply for an act of Parliament upon the marriage of an infant who has an interest in real estate, (although not in the case of a money portion only,) because, " the rights of the infant to real estate will not be bound by any agreement made in relation to it, unless the husband should have issue by that marriage."

This was in 1748. The great case of *Drury* v. *Drury,* followed soon after, in which the House of Lords, reversing Lord Northington, decided that an infant would be barred by a competent jointure, under the statute of 27 Hen. VIII ; (2 Eden's Ch. R. 39 and 60 ; 3 Bro. P. C. by Tomlins, 492 ; Wilmot's Opinions, 177.) The same case was republished in 8 Wend. 297, after our Revised Statutes had settled the law in this state. The extreme length to which the decision was carried in *Drury* v. *Drury,* doubtless strengthened, for a time, the opinion that infants might bind *their own real estate* by a marriage settlement. But that case was decided against the opinion of several eminent judges who were consulted by the House of Lords ;

and although it settled the law in regard to jointures, its propriety has always been questioned. See Lord Henley's note to the case, 2 Eden, 75.

I believe the opinion which I have been examining, never had any other authority in its favor in England, except the dicta of the distinguished chancellors to which I have referred, and the opinion of Mr. Atherley in his Treatise on Marriage Settlements. (Ath. on M. S. 39.)

On the other hand, it is now well settled that a settlement made by a female infant on marriage, will not bind her real estates, so but that she may disaffirm it.

In *Pierson* v. *Pierson,* cited in 1 Bro. C. C. 115, the wife having made such a settlement of a copyhold estate, died before she became twenty-one years of age. The court refused to enforce it against her heir.

*May* v. *Hook,* cited in 1 Bro. C. C. 112, and also reported in Mr. Butler's note to Coke upon Littleton, 216 *a, note* 1, was a similar decision by Lord Bathurst.

In *Durnford* v. *Lane,* 1 Bro. C. C. 106, Lord Thurlow expressed himself strongly against the power of the infant to make a binding settlement, in such a case, and as I understand the report, he so decreed. The criticism of Mr. Atherley on this case, (Ath. on Marr. Sett. 30,) in which he says the decree was irreconcileable with the opinion, is certainly not warranted by the statement of the decree given in Mr. Belt's edition of Brown's Chancery Cases. It seems to me that the decree proceeded upon the principle that the wife could not effectually disaffirm the settlement during coverture; and as the husband was bound by his covenants as well as by his mortgage of the settled estate, the settlement was directed to be carried into effect, during the joint lives of the husband and wife. In *Clough* v. *Clough,* (3 Wooddeson's Lectures, 271, note j,) Lord Thurlow again decided that the infant was not bound. The question arose on a bill filed against her, by the children of the marriage, after the husband's death, to establish the settlement.

Mr. Atherley considers this case as no authority for the opinion that the infant is not bound. Lord Thurlow treated it as an authority in *Caruthers* v. *Caruthers,* (4 Bro. C. C. 500;)

and when the settlement in *Clough* v. *Clough* again came before the court in 5 Ves. 710, 717, Lord Alvanley treated it as a decree absolving the wife from the settlement, and as a decision that an infant cannot be bound by any article entered into during minority, as to her real estate ; and he fully approved of the decision.    In *Milner* v. *Lord Harewood*, (18 Ves. 259,) decided since the publication of Mr. Atherley's Treatise, Lord Eldon concurred in the opinion of Lord Thurlow, that the infant was not bound.    The case was, however, decided on another point.

In *Simson* v. *Jones*, (2 Russ. & Mylne, 365,) Sir John Leach, Master of the Rolls, fully decided the point against the binding effect of the infant's execution of a marriage settlement.    The question arose upon the settlement of leaseholds held by an infant ward of court to her separate use, and which settlement was made under an order of the court, in the form approved by a master.    The leasehold being the separate estate of the wife, stood, in this respect, upon the same footing as her freehold property would.    Sir John Leach says, " Whatever doubts may have been entertained on the subject formerly, I take it to be clear, that the real estate of a female infant would not be bound by a settlement made with the approbation of the court."

And see 2 *Roper's Husb. & Wife, by Jacob,* 26 ; 2 *Kent's Comm.* 244, 2d ed.

I do not find any case adjudged in the courts of this state on this subject, but the doctrine now held in England, appears to be established in Pennsylvania and Virginia.

In *Shaw* v. *Boyd*, (5 Serg. & R. 312,) an infant before her marriage, in consideration of $500, to be paid to her on her husband's death, by his executors, agreed to release her dower to which, on marriage, she would become entitled in his lands. After his death, being still an infant, she received the $500, and executed the release of dower.    It was held that she was not bound by the agreement or the release.

In *Lee* v. *Stewart*, (2 Leigh's Rep. 76,) on marriage articles executed by the husband and wife, before marriage, she being an infant, it was conceded by the counsel who supported the settlement, that the wife, after coverture, might disaffirm it.

The case bears more upon another point of the one under consideration, and will be more fully stated hereafter.

When the order of June 4th, 1389, was made, the chancellor said, " the court has not the power to authorize an infant to execute a conveyance of real estate which would deprive her of the absolute control of her interest therein by means of a trustee for the benefit of some other person, or to change the course of succession. The proper course therefore is, *for Miss James herself to join with her intended husband in the conveyance to the trustee of the real* and personal estate intended to be conveyed in trust, her guardian joining with them in the conveyance or marriage settlement. This will protect the property against the marital rights of the husband, and to complete the arrangement, the intended husband should covenant with the trustee to join with his wife when she shall be of age, in a deed of confirmation to the trustee. The mother is appointed the special guardian for the purpose of assenting to the marriage, and approving of the marriage settlement by joining in the deed of trust and designating the trustee." (MS. note of the Chancellor's decision, June 4, 1839.)

In *Simson* v. *Jones*, Sir John Leach said, " this court has no authority to give an infant a power of alienation, even for her own benefit."

It may be stated then as the result of these authorities, that where an infant on the eve of her marriage, executes a settlement of her real estate, it is a voidable conveyance, which she may repudiate upon her attaining her majority. Whether she can elect to disaffirm it during her coverture, is a vexed question ; but the preponderance of opinion is that she cannot. That she can affirm it, during coverture, after she becomes of age, is perfectly clear, in this state. A conveyance executed and acknowledged as prescribed by our statute, would convey all her interest ; and such a deed of confirmation was contemplated by the chancellor, when he made the order in this case.

Until the wife does repudiate or disaffirm the conveyance or settlement, in an effectual manner, it is binding, and operates upon the estate in the land. And this constitutes the essential difference between the effect of the settlement in controversy as

it now is, and its effect, had Mrs. Temple joined in the execution of the deed.

We have seen that the chancellor ·expected that she would execute the deed. The order as entered, although it does not say in express terms that she shall execute it, yet plainly shows that her execution was intended. The recital in the order is, that the whole of the real estate of Miss James was to be conveyed to the trustee. By whom ·could it be conveyed, except by Miss James herself? The order does not appoint her mother the special guardian *to convey* the estate, either in Miss James' name or otherwise. She is at most, *to join in the deed ;* not to convey the property, but to express her assent to the marriage, her approval of the settlement, and her designation of the trustee.

*Second.* In regard to the personal estate of Miss James, embraced in the settlement, which is the next question in the case, it undoubtedly vested in the trustee. Not because the special guardian could convey it, but because by the marriage it would have become the property of the complainant, and his covenants in the marriage settlement preclude him from questioning the title thereby vested in the trustee.· As to the personal estate, it is in effect, *his* settlement, not Mrs. Temple's. *Harvey* v. *Ashley,* (3 Atk. 607, 613;) *Williams* v. *Williams,* (1 Bro. C: C. 152;) *Trollope* v. *Linton,* (1 Sim. & Stu. 477;) *Simson* v. *Jones,* (2 R. & M. 365.) 2 Roper's H. & Wife, 26.

*Third.*—The next and important question in this suit is *the effect of the settlement upon the complainant's rights in the real estate ;* and upon this point I have felt much doubt and hesitation.

Generally, the estate of the husband is bound, and he is precluded from disturbing the settlement, or even aiding his wife to set it aside, when it is voidable as to her. 2 Kent's Com. 236, 2d ed. 2 Roper's H. & W. 27. Atherley on Marr. Settl. 41. *Durnford* v. *Lane,* (1 Bro. C. C. 106;) *Milner* v. *Lord Harewood,* (18 Ves. 275, per Lord Eldon.)

The case of *Lee* v. *Stuart,* (2 Leigh, 76,) before cited, is a strong authority against the complainant. There Lee and his wife, she being an infant, executed a settlement in contempla-

tion of marriage, and he covenanted with the trustee, very much as the complainant has done here. Five years after the marriage, there having been no issue, Lee and his wife exhibited a bill, praying to have the settlement set aside. The wife concurred in this prayer on a private examination under the direction of the court. The case was put by the complainants, on the ground that the deed was of no binding effect on the infant wife. The counsel for the trustee conceded that the wife, *after coverture* might avoid the deed, but they insisted that during coverture she was disabled to annul or avoid it. The court of appeals, in a brief opinion, affirmed the decree of the chancellor, refusing to annul the marriage settlement, and held that Lee being a party to the deed, was bound by it, no fraud or imposition on him being suggested. The court said that the object of Lee was to enable his wife to dispose of the property for his benefit, or according to his pleasure. They laid much stress upon his covenants, and said that, " so far from a court of equity " assisting him to frustrate the settlement, it ought to interfere " if necessary, to prevent him from assisting her in defeating " it." The case of *Tabb* v. *Archer*, (3 Hen. & Mun. 399,) in which it was held that infants were bound by marriage articles, was not cited by the counsel, or referred to by the court.

The case before me is wholly relieved from the odium which attached to *Lee* v. *Stuart ;* for Mr. Temple, with a liberality which is highly creditable, has in his bill prayed that a just and proper settlement of the whole estate shall be made under the direction of the court, and expressly submits himself to the direction of the court in that behalf.

Moreover, this case differs from *Lee* v. *Stuart,* in one very important particular, for there the wife had conveyed, and so far as she could, vested a title in the trustee. It was a voidable title, doubtless; but here she has conveyed nothing at all.

It is insisted by the complainant's counsel that the complainant executed the deed in ignorance both of the fact that his intended wife was not a party to it, and of its total inefficacy as to her interest in the real estate ; that his conveyance and covenants are therefore made under a mistake, and are destitute of any consideration ; and that he ought not to be held bound

by a conveyance which divests him of all his rights, while it effects none of the objects which it sets forth as the inducements for his release of those rights.

The bill charges that the settlement was proposed by the complainant himself. That the whole proceedings were conducted by Mr. James King, the counsel and legal adviser of Mrs. James; that neither the complainant or Miss James were consulted in regard to the terms of the settlement; that the complainant supposed Miss James would be consulted, and was willing to assent to whatever she approved; that when the deed was presented to him for execution he did not examine or peruse it, and was not acquainted with its provisions, but immediately executed it, believing that his intended wife assented to it and understood it, and that it was an operative conveyance as to her interest in the estate.

He disclaims the idea of any intentional imposition or wrong, but argues that the error was caused by the haste in which the settlement was prepared and executed. Many of these allegations in the bill could only be proved by Mr. King, who is dead. It appears from the petition to the Chancellor and other papers, that Mr. King had the entire charge of the proceedings, and he was in no sense the counsel of the complainant.

The settlement bears date on the eleventh, and the marriage was solemnized on the twelfth day of June, 1839. The Chancellor's order was made on the fourth of June. The despatch which was used in getting up the settlement, the palpable omission to pursue the decision and order of the Chancellor in the preparation and effect of the deed itself, the confidence manifested by the complainant in the accuracy and fidelity of the counsel charged with that duty by the friends of Miss James, together with the natural ardor and impatience of the bridegroom under such circumstances; might well induce a court to believe that the complainant was ignorant alike of the omission in the settlement of the Chancellor's directions, and of the consequent invalidity of the instrument.

By the marriage without any setttlement, the complainant would have become entitled absolutely to the personal estate, and to a life estate in all the realty in question. When by the

settlement he relinquished all these rights, we look for some motive or equivalent. The deed in question professes to give the equivalent, and to exhibit the motive. It is, in form, a conveyance of the whole real estate and $25,000 of the personal estate, to a trustee for the benefit of the intended husband and wife and their issue. As to two thirds, the wife is to take a separate estate for life with power of appointment among the children of the marriage to take effect after her death ; and in the remainder the husband takes a life estate with a similar power of appointment. A valuable provision for life, and a control over the inheritance which may be of great importance in the proper disposition and settlement of the issue of the marriage, is secured to him. When, therefore, we find that this deed, which professes to accomplish all these ends, is wholly and radically defective, that it is hollow in its pretences, and valid in nothing but the divesting of the life estate which the complainant would otherwise have taken in the whole realty ; good faith seems to require that it should not be held binding upon him. The consideration for his deed, turns out to be wholly fallacious. It is true, that if Miss James had joined in its execution, it might not have become wholly operative. That would have depended upon her action. The acceptance of benefits under it, in regard to the separate estate thereby secured to her, would have confirmed it, and possibly her assent might be inferred from other circumstances. See *Durnford* v. *Lane*, (1 Bro. C. C. 116, *per Lord Thurlow.*)   *Milner* v. *Lord Harewood*, (18 Ves. 276-7, *per Lord Eldon.*)

At all events, the trustee would have been clothed with her title for the time being ; and whatever this might have been in actual value, it is what the settlement held out as the inducement for the husband's relinquishment of his rights, and the settlement has failed to attain that object.

In every case where the husband has been held bound by the settlement when the wife was not bound, she has executed the deed, and thus conveyed a title, which at the worst was only voidable. In *Milner* v. *Lord Harewood*, this was not only the fact, but the husband there covenanted to be bound, giving the wife, by the deed, the option to accept or refuse. The case of

*Clough* v. *Clough,* before cited from 5 Ves. 717, shows that equity will regard the failure of consideration in enforcing marriage articles. There the wife having avoided the settlement, the younger children claimed, that the husband was nevertheless bound to provide the stipulated portions on his covenant with the wife to that effect. The court decided that only one half of the portions should be raised out of the husband's estate, it appearing that the intention of the settlement was, that the estates of the husband and wife should contribute equally to the fund for such portions.

In *Tabb* v. *Archer,* (3 Hen. & Mun. 418,) the court made these observations : " Now the husband upon the marriage, is a "*purchaser for valuable consideration,* and shall not be de- " prived of any of his legal rights, accruing upon marriage, except " such as he shall have expressly covenanted or consented to give " up by articles concluded between him and his intended wife. " In decreeing a settlement, therefore, to be made pursuant to " these articles, the court ought to inquire *how far he has given* " *his consent to this deprivation, beyond which the court cannot* " *go.* Therefore, if there be in the articles any contingency un- " provided for, in the happening of which his *legal* rights, *jure* " *mariti,* may take place without prejudice to the general scope " and intention of the articles, and to the interest of those who are " within the consideration of them, *the settlement to be made,* "in the case of such contingency happening, *ought,* I conceive, " *to pursue the rules of law, so as to let him into the perception* " *and enjoyment of those legal rights.*"

Upon the want of consideration to support the complainant's grant and his covenants in regard to the real estate, this case is in principle like that of *Townsend* v. *Corning,* (23 Wend. 435,) and *Townsend* v. *Hubbard,* (4 Hill, 351, in Error.) There it was held, that the vendees were not bound to pay the purchase money, where the agent of the vendor signed and sealed instead of the principal; it thus appearing that the vendees had not obtained for their covenant to pay, the stipulated and expected covenant of the owner to convey. Here the deed recites an order of the court which designed a conveyance by Miss James ; it professes to *convey her title* to the trustee ; and in its grant-

ing clause, witnesses that " *Catharine Margaret James has granted, bargained, sold, &c.*" to the trustee. And although in the statement of the parties it is left equivocal whether she or her special guardian is to sign it, she is made the party of the first part, and we have seen that without her execution of it, it no more affected her rights than a sheet of blank paper.

It was not denied by the defendant's counsel, but that the complainant expected and believed that her title would pass by the ·deed when he executed it. We can scarcely avoid the conclusion that he did not intend to be bound by it in regard to the real estate, unless it operated upon her title. This implied condition is certainly as strong in this case, as it was in the cases at law just cited.

The complainant has not alleged in his bill that he supposed Miss James herself was to execute the deed. He might very well have supposed so, if he had read it before signing it; so that the legal presumption that he knew the contents of the deed, would not affect the probability of that supposition. Assuming that he was aware of her omission to execute it, and that her name was not to be appended, except by her special guardian, the case would in that respect be one of *mistake of the law*, as illustrated by Senator Paige in *Champlin* v. *Laytin*, (18 Wend. 422.) And see the same case in 6 Paige, 189, and 1 Edw. Ch. R. 467. In that case, the Vice-Chancellor relieved, on the ground of mutual misconception of legal rights, amounting to a mistake of law, by which the object of the contract could not be accomplished. The Chancellor affirmed the decree, on the ground of a misrepresentation of the rights of the vendor, declining to pass on the other question; and in the Court for the Correction of Errors, Judge Bronson repudiated, in emphatic terms, the doctrine that there was any difference between *mistake* and *ignorance* of the law, while Senator Paige upheld the distinction. The point was not finally decided in that case, and I prefer to rest my decision upon other grounds.

The deed recites the order of this court, and professes to be made in conformity to it. Its non-conformity was not known to the complainant, and this was a mistake in a material fact.

Again, the deed may be considered a *representation* by those acting in behalf of Miss James, and of the children who come in as purchasers under the settlement, that it was made pursuant to the order and directions of the Chancellor, and the complainant had a right to rely upon such a representation, and upon the consequent effect and validity of the deed conforming to the order of the court.

And finally, the entire failure of the consideration of the complainant's grant and covenants as to the real estate, in connection with the two points last mentioned, induce me to hold that he ought not to be bound, and that the conveyance as to the real estate ought to be rescinded.

I have come to this conclusion with doubt and difficulty, but certainly without reluctance. It was conceded on all hands, that the settlement required reformation in many important particulars. It made no provision for the disposition of one-third of the estate in case of the death of the parties without leaving issue, and so of the other two-thirds, if Mrs. Temple dies first. The real estate is principally unproductive, subject to taxes and assessments, without any power in the trustee to improve it, and with the prospect that the limited income of the trust would compel him ultimately to suffer the lands to be sold for those imposts, or else to deprive the wife and her growing family of their proper and accustomed support. The trustee could make no valid title by way of sale or mortgage, and even his leases would be defeasible by the death of the complainant, and Mrs. Temple's assertion of her estate in the premises.

The covenants of the complainant as to the real estate being void, I perceive no objection to Mrs. Temple's joining her husband in making a new settlement. There is no difficulty here in reference to her power of avoidance during coverture, for as to her, there is nothing to avoid. She declares her willingness to have the deed cancelled, and to execute a proper settlement.

As to the personal estate vested in the trustee, I do not perceive any reason for disturbing it. The complainant's transfer of his expected marital right in that fund, and his covenant not to interfere with the trust in that behalf, rest upon entirely dif-

Temple *v.* Hawley.

ferent grounds and considerations from his deed and covenants in regard to the real estate. He receives by the settlement, all the benefit from the personal estate for which he stipulated, or which the instrument professed to give. And there was a good consideration for his relinquishing so much of the personal estate, in this circumstance, that if he had married without a settlement, he could not have obtained any of the personal property without coming into this court, where the wife's equity would be enforced as a matter of course. The defect in the settlement in failing to provide for the disposition of the fund after the death of the parties without issue, should be corrected as to the personalty; and it may be provided for in the decree.

The counsel for the trustee asked the construction of the court upon the classification of real estate contracted to be sold before the execution of the settlement, and whether he was to treat it as real or personal estate of Mrs. Temple. The property was stated to have been held by a trustee for the benefit of Mrs. T. and others as tenants in common. I find no mention of this point in the pleadings. If an *obiter* opinion can avail the trustee in any respect, he can have it. I think it is to be deemed personal estate on well established principles of equity. 2 Story's Eq. 98, 99. 459, 460, and the cases cited.

There must be a reference to a master to settle and approve of a proper settlement of the real estate to be executed by the parties, on the existing settlement being set aside. No other decree will be made until the coming in of the master's report.

————

March 9, and ⎰˙   The cause again came to a hearing on the
April 3, 1844. ⎱  report of Master Cambreleng, and the equity reserved. The master reported the form of a settlement of the real estate, to be executed by the parties. Objections were taken to his report by the defendants on three grounds, which are stated in the opinion of the court. On considering the form of the deed, the court directed some changes in the limitations, as noted in the decision.

*B. F. Butler,* for the complainant.

*J. Rhoades,* for Mrs. Temple.

*J. V. L. Pruyn,* for Mr. Hawley, and the infant defendants.

THE ASSISTANT VICE-CHANCELLOR.—As Mr. Hawley does not desire the trust, it is not proper to direct him to assume it. There are many good reasons too, for selecting a younger man. The master has reported in favor of the husband as a suitable person to execute the trust. No objection is made to him, save the fact that he is husband, and has a life interest secured to him in a portion of the property.

I think under the circumstances, and with all the safeguards which attend this trust, the husband is a proper trustee.

The next objection to the report, is to the master's allowing to the husband a life interest in one half of the realty embraced in the settlement, with a power of appointment of that half amongst the issue of the marriage.

Considering that $25,000 of personal estate is settled upon Mrs. Temple exclusively ; and that Mr. Temple but for the settlement now on the point of being made, would have an estate for his own life in the whole of the realty; and also having regard to the aggregate value of the latter; I am satisfied with the master's conclusion upon this branch of the case.

The same considerations apply to the provision which gives to Mr. Temple an absolute life interest in the half part of the real estate, in the event of his surviving his wife. Besides, no shaping of the trust could prevent his estate in that half from being legal and absolute.

The specific objections made to the trust deed settled by the master, are therefore overruled.

In the cross remainders limited in the half part of the estate of which Mr. Temple is to receive the income, to take effect in the event of his dying without making an appointment, there is some doubt as to the validity of the clause directing a further and second contingent limitation over, of the same interest, on

the death of another of the issue under age, such issue having taken on the death of one previously.

The 16th section of the Article relative to the Creation and Division of Estates, (1 Rev. Stat. 723,) requires the contingent remainders thereby authorized, *to take effect* in the event that the persons to whom the *first remainder* is limited, shall die under the age of twenty-one years, &c., or upon some other contingency attendant upon the estate of such persons. It does not permit the creation of a contingent remainder to take effect upon the death of the one who takes under the prior contingency, from the person to whom the first remainder is limited.

If, in this instance, the limitation were restricted to a contingency within the life of Mrs. Temple, it would be valid. And a like provision as to the life of Mr. Temple would aid in the subsequent instance. Either the trust must be thus modified, as to these cross remainders, or the clause " subject to be divested in " like manner by the death under age and without issue of such " surviving issue so taking," will be stricken out of the settlement.

The similar limitation of a second contingent remainder, in the event of Mrs. Temple's dying first, in the other half of the estate, is also to be omitted, or modified like the former.

In the declaration of the trust for Mrs. Temple's separate use, after the words " as she shall from time to time direct," the trust deed should contain the clause, " but not by way of as-" signment, charge, or other anticipation thereof." And further to guard against anticipating income, the provision declaring the force of her receipts to discharge the trustee, will limit it to rents, profits, and income, *then actually received by the trustee*, prior to the day in the receipt specified, and provide that it is not to extend *farther or otherwise. Brown* v. *Bamford*, (11 Simons, 127.)

I recollect of nothing in the case requiring any distinction as to the whole or half-blood taking, on the ultimate failure of issue, provided they be of the blood of William James. Unless there be some cause for it, which is not apparent to me, the limitation over should not specify one individual of the half-blood to the exclusion of others.

With these modifications, the trust deed is approved.

The decree will direct its execution by the parties, and in other respects will carry out the opinion of the court, as declared on the former hearing of the cause.

The costs of the parties must be borne by the trust fund.